UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Cr. No. 19-305 (NEB/BRT)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **DEFENDANT'S PRE-HEARING** |
| v. ) | **MEMORANDUM IN SUPPORT** |
| ) | **OF MOTION TO SUPPRESS** |
| NEERAJ CHOPRA, ) | **STATEMENT** |
| ) | |
| Defendant. ) | |

## FACTS

On April 8, 2019, several law enforcement officers, including Airport Police Officer Abbie Annen ("Officer Annen") and FBI Special Agent Marc Rensch ("SA Rensch") were involved in the arrest of Mr. Chopra at the Minneapolis/St. Paul Airport. Mr. Chopra was later arrested, booked, and fingerprinted. He was escorted by Officers Rosand and Zizzo to the Police Operations Center, Interview Room Number HT-1199C at Terminal 2 for a recorded interview by SA Rensch and Officer Annen. The room was very small room with no windows except for a small window in the door; the door was closed except for when the officers came in and left. Mr. Chopra was claustrophobic, had panic attacks, almost threw up, and was crying. At the beginning of the statement, Mr. Chopra stated, "I was feeling very claustrophobic in the room" and "I'm stressed out." When he was interrogated, his back was against the wall and the two officers faced him. He did not have his phone or other belongings.

The following conversation occurred:

MR:   Okay. So, today's date is April 8, 2019. It is 8:28 p.m. All right. So before we ask you any questions, I'm going to read you your rights, okay, and let you know what those are. I'm going to read them to you, and then you can just follow along.

> "Before we ask you any questions, you must understand your rights. You have the right to — to remain silent. Anything you say can be used against you in court. You have a right to talk to a lawyer for advice before we ask you any questions. You have the right to have a lawyer with you during the questioning. If you cannot afford a lawyer, one will be appointed for you before any questioning, if you wish. If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time.
>
> I have read this statement of my rights, and I understand what my rights are. At this time, I'm willing to answer questions without a lawyer present."
>
> So why we're here today is because we want to find out why we're here. Why are we all here? What happened? Okay? Simple as that, your side of the story.

NC:   Sure.

MR:   All right? That's why I'm here. That's why they came — they asked me to come out here and talk to you. So, if it's — if you want to talk to me about that, I'll just need you to sign right there.

NC:   Sure.

In the immediate days leading up to the flight at issue, Mr. Chopra was in Washington, DC attending classes at Cornell University for the weekend and celebrating a friend's birthday with classmates. The following description is a brief summary of his schedule:

| Thursday, April 4, 2019: | Mr. Chopra flew from Minneapolis to Boston (Flight 1736), arriving at 9:42 p.m., spent the night at the airport |
| --- | --- |
| Friday, April 5, 2019: | Mr. Chopra flew from Boston to Washington, DC (Flight 1600), arriving at 7:19 a.m., spent most of the day working at the airport, explored the city, stayed up with friends until 2:00 a.m. |
| | ~~ 4 hours sleep ~~ |

| | |
|---|---|
| Saturday, April 6, 2019: | Mr. Chopra woke up at 6:00 a.m., attended classes until 6:30 p.m., celebrated a friend's birthday, stayed up with friends/classmates until 4:30 a.m. |
| | ~~ 2 hours sleep ~~ |
| Sunday, April 7, 2019: | Mr. Chopra woke up at 6:30 a.m., attended classes until 1:30 p.m., took a subway train to the airport, waited on stand-by for a flight, but could not get a seat, stayed the night at the airport with very little sleep. |
| Monday, April 8, 2019: | Mr. Chopra took an early morning flight from Washington, DC to Boston (Flight 254), arrived in Boston at approximately 8:00 a.m., had to wait until the afternoon to get a seat on an airplane from Boston to Minneapolis (Flight 1735), which left at 2:40 p.m. |

As discussed in his interview, Mr. Chopra had very little sleep in the immediate days prior the flight at issue in this case, and had consumed much alcohol during the late-night parties. In short, when he boarded Flight Number 1735, he was exhausted.

## ARGUMENT

To admit Mr. Chopra's April 8, 2019 in-custody statement to SA Rensch, the prosecution bears the burden of proving by a preponderance of the evidence that Mr. Chopra waived his *Miranda* rights and that the waiver was voluntary. *See Colorado v. Connelly*, 479 U.S. 157, 168 (1986); *Lego v. Twomey*, 404 U.S. 477, 489 (1972). A waiver of *Miranda* must be knowing, intelligent, and voluntary. *Moran v. Burbine*, 475 U.S. 412, 421 (1986); *United States v. Woods*, 829 F.3d 675, 680 (8th Cir. 2016) (citation omitted). "[T]he waiver must have been made with a

3

full awareness of both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.*

Reviewing Courts must look to the totality of the circumstances surrounding the interrogation to answer these inquires. *Id.*; *see, e.g.*, *Tague v. Louisiana*, 444 U.S. 469, 471 (1980) (per curiam). "[A] valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained." *Miranda v. Arizona*, 384 U.S. 436, 475 (1966). In *Woods*, the defendant's *Miranda* waiver was valid when he was read his *Miranda* rights, "acknowledged that he understood his rights, agreed to speak with the officers," and confessed. 829 F.3d at 680.

A valid waiver "may be made in writing on a printed format or it may be made orally by replying to questions . . . ." *United States v. Zamarripa*, 544 F.2d 978, 981 (8th Cir. 1976) (citations omitted). However, "[t]he validity of a waiver is to be determined from all of the surrounding circumstances." *Id.* (citation omitted). There must be "evidence that the defendant knew and understood his rights, and voluntarily answered questions." *Id.* The waiver "must be the product of a free and deliberate choice rather than intimidation, coercion, or deception," and the defendant "must have a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *United States v. Phillips*, 506 F.3d 685, 687 (8th Cir. 2007) (citation and inner quotation marks omitted). If the defendant "does not claim that he was intimidated, coerced, or deceived, the question is whether he sufficiently understood the nature and consequences of his waivers." *Id.*

The sole remedy for a *Miranda* violation is the suppression of the tainted confession. *Bennett v. Passic*, 545 F.2d 1260, 1263 (10th Cir. 1976); *Hannon v. Sanner*, 441 F.3d 635 (8th Cir. 2006).

I. **Mr. Chopra Did Not Waive His *Miranda* Rights**

In this case, SA Rensch read the *Miranda* warning, which is transcribed below, but did not ask if Mr. Chopra understood his rights, and did not ask him if he waived his rights to give a statement:

> MR: Okay. So, today's date is April 8, 2019. It is 8:28 p.m. All right. So before we ask you any questions, I'm going to read you your rights, okay, and let you know what those are. I'm going to read them to you, and then you can just follow along.
>
> "Before we ask you any questions, you must understand your rights. You have the right to — to remain silent. Anything you say can be used against you in court. You have a right to talk to a lawyer for advice before we ask you any questions. You have the right to have a lawyer with you during the questioning. If you cannot afford a lawyer, one will be appointed for you before any questioning, if you wish. If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time.
>
> I have read this statement of my rights, and I understand what my rights are. At this time, I'm willing to answer questions without a lawyer present."
>
> So why we're here today is because we want to find out why we're here. Why are we all here? What happened? Okay? Simple as that, your side of the story.
>
> NC: Sure.
>
> MR: All right? That's why I'm here. That's why they came — they asked me to come out here and talk to you. So, if it's — if you want to talk to me about that, I'll just need you to sign right there.
>
> NC: Sure.

SA Rensch merely read the statement to Mr. Chopra and asked him to sign the written waiver. There was no discussion or even question of whether Mr. Chopra understood the waiver nor whether he actually waived his *Miranda* rights. There is no evidence that he knew the consequences of giving a statement to an FBI agent. In short, there is absolutely no discussion of

5

a waiver. Mr. Chopra was given the *Miranda* warning quickly and told to sign the waiver. This is not a valid waiver of his rights.

II.     **Mr. Chopra's Statement Was Not Voluntary**

Whether a statement is voluntary is a separate question from whether a defendant was advised of, and waived, his *Miranda* rights. *See, e.g.*, *United States v. Anderson*, 929 F.2d 96, 98 (2d Cir. 1991). "A waiver is voluntary if it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *United States v. Gaddy*, 532 F.3d 783, 788 (8th Cir. 2008). "In order to determine whether a confession was voluntary, we look to the 'totality of the circumstances and must determine whether the individual's will was overborne.'" *Id.* (quoting *United States v. Castro-Higuero*, 473 F.3d 880, 886 (8th Cir. 2007)). The totality of the circumstances includes consideration of the defendant's personal history, level of education, and physical condition of the accused, as well as circumstances in which police officers elicited the statement. *See Crane v. Kentucky*, 476 U.S. 683, 691 (1986) (evidence that an uneducated teenager was confined in a small, windowless room of a detention facility surrounded by officers is relevant to a consideration of the voluntariness of the defendant's confession). "Sleeplessness, alcohol use and drug use are relevant to our analysis, but '[i]ntoxication and fatigue do not automatically render a confession involuntary.' Instead, 'the test is whether these mental impairments caused the defendant's will to be overborne.'" *Gaddy*, 532 F.3d at 788 (quoting *United States v. Casal*, 915 F.2d 1225, 1229 (8th Cir. 1990)).

In *Gaddy*, the defendant was "administered the *Miranda* warnings" and the agent wrote the defendant's answers on the *Miranda* waiver form due to the defendant's hands being behind his back. 532 F.3d at 786. The waiver showed that the defendant "understood and waived his *Miranda* rights and was willing to make a statement." *Id.* About 40 minutes later, law

enforcement asked him again if he wanted to give a statement, the defendant stated he did, and then he gave a statement. *Id.* The defendant argued for suppression of his statement, testifying that "he had not slept the night before the arrest" and had taken medication and consumed alcohol, marijuana, and cocaine the day and night prior to the arrest. *Id.* He argued that due to the lack of sleep, the alcohol, and drugs, his *Miranda* waiver was not voluntary. *Id.* The district court denied the suppression motion. *Id.* The appellate court noted that the interviewing law enforcement officers testified that the defendant appeared awake and coherent, that the defendant did not inform them that he was tired or intoxicated or under the influence of drugs, that the defendant acknowledged that he understood his *Miranda* rights, and that he wanted to give a statement. *Id.* at 788. Further, the evidence showed that the defendant was not confused or disoriented, was calm and quiet and compliant and cooperative, and agreed a second time to give a statement about 40 minutes after the waiver. *Id.* The court specifically considered the fact that the defendant had "extensive contact with law enforcement" in the past. *Id.* at 788–89; *see also United States v. Gallardo-Marquez*, 253 F.3d 1121, 1123 (8th Cir. 2001) (statement was voluntary due to, in part, the defendant's extensive prior contact with law enforcement). Thus, based on the totality of the circumstances, the *Miranda* waiver was voluntary. *Id.* at 789.

Here, the first thing Mr. Chopra spoke of in the beginning of the interrogation was being claustrophobic in the small and tight room. The following exchange occurred:

> MR:   All right. Okay, at 8:29. I see you've got some water there. That's good. Do you need a refresher on that? You need some more water or anything?
>
> NC:   **I — I feel — I was feeling very claustrophobic in the room** (emphasis added)
>
> MR:   In — in this room?
>
> NC:   Yeah.

7

| | | |
|---|---|---|
| MR: | Yeah. It's kind of a small room. Hopefully it's better now that we're in here with you, right? | |
| NC: | Sure. | |
| MR: | Or does it make it look — feel smaller? | |
| NC: | No. I'm — I'm stressed out. | |
| MR: | Okay. All right. | |
| NC: | This is — | |
| MR: | I'll — I won't keep you. We'll just get right to the point and just find out what happened. Okay? Can you spell your last name for me? | |

Unlike *Gaddy*, SA Rensch and Officer Annen knew that Mr. Chopra was not in the right mental state—he told them that he was claustrophobic and stressed out. He later told them he was exhausted. Further, unlike *Gaddy*, Mr. Chopra has had no prior experience with law enforcement as he has never been investigated much less convicted of a crime. He was unfamiliar with the process. Thus, the written waiver, without evidence that he understood and waived his rights, is invalid, and the statement must be suppressed.

## DEMAND FOR HEARING AND WITNESSES

If the government intends on introducing any statements of Mr. Chopra in its case-in-chief at trial, he requests an evidentiary hearing to address this motion and the opportunity to cross-examine SA Rensch and Officer Annen. In a motion to suppress, the Court is required to hold an evidentiary hearing if the defendant makes an offer of proof that is "sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *United States v. DiCesare*, 765 F.2d 890, 896 (9th Cir. 1985) (citation omitted).

Respectfully submitted,

**RYAN GARRY, ATTORNEY, LLC**

Dated: January 24, 2020

s/ Ryan Garry
Ryan P. Garry (Attorney No. 0336129)
Attorneys for Defendant
333 South Seventh Street, Suite 2350
Minneapolis, MN 55402
Phone: (612) 436-3051
Fax: (612) 436-3052
ryan@ryangarry.com