## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 19-CR-305 (NEB/BRT) |
| Plaintiff, | |
| v. | ORDER ACCEPTING REPORT AND RECOMMENDATION |
| NEERAJ CHOPRA, | |
| Defendant. | |

The United States charged Neeraj Chopra with one count of non-consensual sexual conduct in violation of 18 U.S.C. Section 2244(b) and 49 U.S.C. Sections 46501(2)(A) and 46506(1). (ECF No. 1.) Chopra moved to suppress certain statements he made during an interrogation on the grounds that they were obtained in violation of his constitutional rights. (ECF No. 21.) In a Report and Recommendation dated December 14, 2020 (the "R&R"), United States Magistrate Judge Becky R. Thorson recommends that the Court deny Chopra's Motion to Suppress. (ECF Nos. 68, 70 ("R&R").)[1] Chopra objected to the R&R. (ECF No. 71.) For the reasons that follow, the Court accepts the R&R and denies Chopra's motion.

---

[1] In this opinion, references to page numbers in the R&R will be to Docket No. 70, the publicly filed R&R.

When a party properly objects to an R&R, the Court's reviews those portions of the R&R to which the party objects *de novo*. *See* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b); D. Minn. L.R. 72.2. These objections, however, generally must specifically identify the parts of the R&R to which the party objects and give a basis for those objections. *United States v. Pearson*, No. 15–CR-117 (JRT/TNL), 2015 WL 6445439, at *1 (D. Minn. Oct. 23, 2015.) The Court reviews objections that simply rehash arguments made to the Magistrate Judge for clear error. *Id.* This is certainly the case in the civil context. Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 72 advisory committee's note, subd. (b) ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). But it is less clear in the criminal context. As the Eighth Circuit has not considered the issue, the Court will err on the side of caution and review the R&R *de novo*. *Cf. United States v. Hardwict*, No. S1-4:18-CR-00925 AAGF (NCC), 2020 WL 3046166, at *1 (E.D. Mo. June 8, 2020) (applying a *de novo* standard of review after the defendant filed "fairly general objections to the R&R, essentially challenging [its] conclusions"). Ultimately, it makes no difference; under either standard, Chopra's motion fails.

## ANALYSIS

The R&R sets forth the undisputed facts[2] in the case, and the Court incorporates those facts by reference. (R&R at 2–5.) Chopra argues that the Court should suppress his statements because: (1) he did not voluntarily waive his *Miranda* rights;[3] and (2) he did not make a knowing and intelligent waiver of those rights. (ECF No. 66 at 11–18.) Specifically, Chopra moves to suppress statements he made on April 8, 2019, to FBI Special Agent Marc Rensch, in an interview room at Minneapolis-Saint Paul International Airport. Chopra argues that his mental state at the time of the interview—tiredness from travel and sleepless nights, along with claustrophobia—rendered his statements involuntary and prevented him from knowingly and intelligently waiving his *Miranda* rights. (*Id.*) The United States argues that Chopra's waiver was valid. (ECF No. 67 at 9–14.)

### I. *Miranda* Waivers

The Constitution guarantees a criminal defendant the right not to incriminate himself. U.S. Const. amend. V. Because of this right, the government generally cannot use the defendant's statements against him at trial if he made them during a custodial

---

[2] Chopra "rests on the record" and objects only to the R&R's "legal conclusion[s]" as to the merits of his motion; he makes no objection to the R&R's factual findings. (ECF No. 71 at 2.) The United States similarly does not object to the R&R's factual determinations.

[3] To the extent that Chopra also argues that his statements themselves were not voluntary (rather than his waiver of his *Miranda* rights), that argument fails for the same reasons for which his waiver argument fails.

3

interrogation. *Miranda v. Arizona*, 384 U.S. 436, 445 (1966). But if the government provides the defendant with the warnings *Miranda* requires, and the defendant waives his rights knowingly, voluntarily, and intelligently, then the government may use, at trial, statements made after the advisement of rights and waiver. *United States v. Vinton*, 631 F.3d 476, 483 (8th Cir. 2011).

Whether a *Miranda* waiver is knowing, voluntary, and intelligent is a two-pronged inquiry. *Id.* First, the waiver must actually be voluntary—that is, of the defendant's own "free and deliberate choice," and not as a result of "intimidation, coercion, or deception." *Id.* (internal quotations omitted). Second, the defendant must waive his rights knowing the consequences of doing so and the nature of the rights he waives. *Id.* In assessing whether a waiver is knowing, voluntary, and intelligent, the Court considers the totality of the circumstances. *Id.* The United States bears the burden to prove the validity of the waiver by a preponderance of the evidence. *United States v. Haggard*, 368 F.3d, 1020, 1024 (8th Cir. 2004).

## II.     Voluntary Waiver

As to the first inquiry—voluntariness of Chopra's waiver—the record demonstrates that Chopra voluntarily waived his *Miranda* rights. Special Agent Rensch did not intimidate, coerce, or threaten Chopra, either explicitly or implicitly, before or

during, questioning. (*See generally* Ex. 2 (SA Rensch's interview with Chopra).)[4] The same is true of Airport Police Officer Abbie Annen, who was in the room with SA Rensch and Chopra.[5] (*See generally id.*) Neither SA Rensch nor Officer Annen acted in an intimidating manner towards Chopra, displayed their firearms, or otherwise acted to coerce Chopra. SA Rensch's testimony is also consistent with the interview video, which shows that Chopra willingly spoke with SA Rensch after he gave Chopra the *Miranda* warnings. The atmosphere in the interview room, apart from Chopra's statements that he felt claustrophobic and a moment where Chopra began crying during the interview, was calm. SA Rensch did not raise his voice, was not overly confrontational, and retained a relaxed demeanor. Chopra did not hesitate to sign the waiver of his rights; once SA Rensch presented him with the Advice of Rights form, went through Chopra's rights, and gave him the opportunity to waive those rights, Chopra signed immediately. (Ex. 2)

---

[4] The Court's citations to exhibits refer to the three exhibits Judge Thorson received during the suppression hearing. Exhibit 1 is the Advice of Rights form that Chopra signed; Exhibit 2 is a series of three videos of Chopra's time in the interview room (the second video contains the interview itself); Exhibit 3 is a transcript of SA Rensch's interview with Chopra.

[5] Although Officer Annen ultimately arrested Chopra (or was present while another officer did so), this occurred after the conclusion of Chopra's conversation with SA Rensch and Chopra does not ask to suppress any statements from the arrest itself. Her only interaction with Chopra during SA Rensch's conversation was to supply him with the word "tray table" when Chopra was unable to come up with the word, for which Chopra thanked her. (Ex. 3 at 6; Ex. 2.)

5

These facts demonstrate by a preponderance of the evidence that Chopra's waiver was voluntary.

Chopra argues, to the contrary, that his mental state—claustrophobia and tiredness—rendered his waiver involuntary. (ECF No. 66 at 11–15.) But the record shows that Chopra's mental state did not affect the voluntariness of his waiver. Sleeplessness is a consideration in assessing the voluntariness of the waiver, but the fact that the defendant was fatigued does not, of itself, render a waiver involuntary. *United States v. Gaddy*, 532 F.3d 783 (8th Cir. 2008). Instead, "the test is whether [the defendant's sleeplessness] caused the defendant's will to be overborne." *United States v. Casal*, 915 F.2d 1225, 1229 (8th Cir. 1990). For example, a defendant's *Miranda* waiver was still voluntary when he had recently used methamphetamine and had not slept for five days before waiving his rights where police officers had no knowledge of his alleged impairments and the defendant did not act intoxicated. *Id.* Likewise, a waiver where the defendant used methamphetamine the night before and marijuana the day of the waiver still voluntarily waived his rights when he appeared "sober and in control of his faculties." *United States v. Contreras*, 372 F.3d 974, 977 (8th Cir. 2004).

Here, although Chopra told SA Rensch that he was tired and claustrophobic, SA Rensch testified that Chopra did not appear tired; he did not yawn, slump, or doze off; he kept good posture and maintained eye contact; and he did not appear confused. (ECF No. 61 at 24:6–25:13.) The video of the interview bears out SA Rensch's testimony—

6

Chopra is engaged in the conversation with SA Rensch and exhibits no visual signs of tiredness. The fact that Chopra informed SA Rensch that he was tired and claustrophobic is not determinative; the Eighth Circuit has repeatedly emphasized that the outward appearance of the defendant is an important part of the assessment of voluntariness. *Gaddy*, 532 F.3d at 788; *Contreras*, 372 F.3d at 977; *Casal*, 915 F.2d at 1229. The inquiry is one of the totality of the circumstances. *Vinton*, 631 F.3d at 483. Although Chopra's statement that he was claustrophobic and tired is one factor the Court considers, the video and SA Rensch's testimony are others, and they run counter to Chopra's statement.

Other than a reference to the fact that he was stressed and later statements about tiredness and claustrophobia—made after he signed the Advice of Rights—Chopra has presented no evidence that he was incapable of voluntarily waiving his rights. In contrast, the United States has produced substantial evidence demonstrating that Chopra both understood the rights SA Rensch read to him and the consequences of waiving those rights. This lack of evidence is a fatal flaw in his motion to suppress.

Further, even if informed that the defendant is tired, or has another mental impairment, a government agent need not conduct an exhaustive inquiry as to the defendant's mental state and impairments before the defendant can make a valid *Miranda* waiver. *United States v. Perez*, No. CR 08-50033-KES, 2009 WL 363618, at *10 (D.S.D. Feb. 12, 2009) (noting that there is no authority for the proposition that a federal agent was required to comprehensively examine a defendant's mental condition prior to an

interview, especially where the defendant exhibited no outward signs of impairment). The sole question is whether these impairments overbore the defendant's will. *Casal*, 915 F.2d at 1229. There is no evidence that this happened to Chopra. Instead, SA Rensch's testimony, along with the interview video, demonstrate that Chopra appeared alert and attentive and was engaged and responsive during the interview.

The United States has shown by a preponderance of the evidence that Chopra's waiver of his *Miranda* rights was voluntary.

### III. Knowing and Intelligent Waiver

As to the second inquiry—whether the waiver was knowing and intelligent— the preponderance of the evidence shows that Chopra was aware of the rights he waived and the consequences of doing so. As soon as SA Rensch entered the interview room, he identified himself as an FBI agent and explained why he was there—that he wanted to ask Chopra some questions about what happened and get his side of the story; Chopra did not appear confused as to why SA Rensch was present. SA Rensch then reviewed the Advice of Rights form with Chopra. The form listed both the *Miranda* rights and the consequences of abandoning them. SA Rensch also read the acknowledgement on the form, once again told Chopra why he was there, and said that if Chopra wanted to talk to him, he needed to sign the form. Chopra, without hesitation, signed the form. (Ex. 1; Ex. 2.) Chopra does not argue that he is unable to understand English, and the record would contradict that, as Chopra was able to communicate with SA Rensch and, at the

8

time of the interview, was a graduate student in an MBA program at Cornell University. (Ex. 3 at 3.) There is no evidence that Chopra was unable to understand when SA Rensch read him his rights.

Chopra argues that, although SA Rensch read him his rights, SA Rensch never explained his rights, that he was therefore unaware of them, and could not knowingly and intelligently waive those rights, particularly because he had no prior experience with the criminal justice system. (ECF No. 66 at 17.) *Miranda* requires that the defendant be informed of his right to remain silent and also that an explanation that anything he says can be used against him come with that warning. *Miranda*, 384 U.S. at 467–69. That is precisely what the Advice of Rights form provided Chopra: it stated (as SA Rensch read to him) that he had the right to remain silent and that anything he said could be used against him in court. (Ex. 1.) This explanation of Chopra's rights satisfies *Miranda*. The fact that Chopra had no past experience with the justice system, and had never previously been *Mirandized*, does not dictate a different result. Chopra has provided the Court with no authority (and the Court can find none) for the proposition that an investigator administering *Miranda* warnings must give a more in-depth explanation of the *Miranda* rights if it is the defendant's first time being given those warnings.

Chopra also asserts that his fatigue prevented his knowing and intelligent waiver of his rights. The Court has already rejected Chopra's argument that his mental state impaired his ability to voluntarily waive his rights, and his assertion that his mental state

9

impaired his knowing and intelligent waiver fails for the same reasons. Absent evidence of coercion, even in the presence of fatigue, a *Miranda* waiver is still valid. *Vinton*, 631 F.3d at 483; *see Gaddy*, 532 F.3d at 785–89 (finding *Miranda* warnings valid where the defendant was woken up during an early search of his property and appeared "awake and coherent"); *Casal*, 915 F.2d at 1129 (upholding *Miranda* waiver where the defendant recently used methamphetamine, had not slept in five nights, the police had no knowledge of the alleged impairments, and the defendant did not act intoxicated). There is no evidence of coercion in this case, and the video of Chopra's interview belies his contention that he was unable to understand his wavier. Accordingly, Chopra's *Miranda* waiver was voluntary, knowing, and intelligent.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. The Report and Recommendation (ECF Nos. 68, 70) is ACCEPTED.
2. Chopra's Motion to Suppress (ECF No. 21) is DENIED.

Dated: February 2, 2021                              BY THE COURT:

                                                     s/Nancy E. Brasel
                                                     Nancy E. Brasel
                                                     United States District Judge